We have faced the court. My name is Krista Emsweiler, and I represent Appellant Ben Cross-Appley with CHP Officer Terrence Plumb. When faced with the physically resistive suspect, Officer Plumb did exactly what he was trained to do, and as a result was found liable. This court should reverse the verdicts against him for the following six reasons. First, Officer Plumb's use of a single, non-injury-causing, less-than-full-force distraction wrench did not violate the Fourth Amendment. Second, Officer Plumb's use of that wrench did not vitiate the probable cause that existed for arresting Mr. Orr for violation of California Penal Code, Section 148b. Third, Officer Plumb is entitled to qualified immunity for both his use of force and his purported false arrest of Mr. Orr. Fourth, Mr. Orr failed to demonstrate that Officer Plumb had interfered with Mr. Orr's Fourth Amendment rights for the use of threats, intimidation, or coercion to create liability under California Civil Code, Section 52.1, which is commonly referred to as the Bain Act. Fifth, Officer Plumb was denied a fair trial as a result of the actions of the District Court below. And sixth, the jury instructions relating to probable cause for arrest for violation of Penal Code, Section 148a and liability under Civil Code, Section 52.1 were erroneous, and the errors in the instructions resulted in findings of liability where liability simply does not lie. So counsel, your client had an opportunity to present all of the evidence that was favorable to him to a jury, correct? He did. And the jury found against him? The jury found against him on... The extensive force in the Bain Act? That is correct. And so, why should we reverse the position of the jury? This court should reverse the decision of the jury because the use of the force, what it comes down to is a single destruction punch that liability was found on, and in the context of all of the circumstances of this case and everything that the officer was presented with, that use of the destruction punch was a reasonable use of force. Counsel, can you explain why the officer did not report the punch when he was making this report? I cannot explain it because there is inconsistent testimony in the record. Officer Plum indicated that he did report it to Sergeant Stott. Sergeant Stott says that he did not remember Officer Plum reporting it to him. And no time did any other individual, such as Mr. Orr, report to Sergeant Stott or Sergeant Kelly that he had been punched. And according to Sergeant Stott, Officer Plum was not provided with any opportunity to review the report for its accuracy, which Officer Plum could have then arguably provided that information. So there is a clear explanation or a clear determination that he did not, in fact, report the punch. And, in fact, that wasn't a finding of the jury, and the jury was never asked to determine that issue. What they were asked... Did Officer Plum do a written report? Not that I recall. I'm sorry. Can I have you address the threshold jurisdictional question? You raised six grounds for reversal, several of which were raised in the second appeal. How is that likely? The two issues that were raised in the second appeal, which were the judicial misconduct and the errors in the jury instructions, were the main act. Minor clarification, the Bain Act, the substantive finding, whether or not there was substantial evidence to support the finding under the Bain Act, was, in fact, raised. Yeah, the jurisdiction was reserved for the Bain Act. Correct. In the case of the second appeals, how do we have jurisdiction to hear that? Section 1291 provides that this Court has jurisdiction to hear all matters of final decisions and federal rule of appeals for a provisional act. This Court can hear orders or judgments. In this case, we have a curious situation in which the Rule 15a or the 15b motion and the motion for attorneys fees were ordered to be filed before judgment was made. As I understand your position, your jurisdictional option is that you're appealing from the Jane Oyl order, right? We are appealing from both. The second appeal is an appeal from the judgment itself. The reason... Would you still believe that? I don't believe that we are, because judgment was actually not entered in this case until February of 2016, and the appeal was filed. I know, but it was. If it requires a separate judgment, it becomes effective. And you don't have one of those exact 150 days, and then you have 30 days from that to appeal it, and you appeal later than that. Our read of the Rule is that it runs 150 days from the time that that verdict becomes final, because the Court was still considering the 50b issues as well as the qualified immunity issues. That verdict could not become final until the decision on the 50b motion, and then 150 days and an abundance of caution in assuming that a denial of a 50b motion and a verdict somehow create a final judgment. 150 days ran from that to then. Well, I think part of the problem is that under Stat. 4 and through Rule 58, the judgment, the JML, is a motion that requires a separate document. So I don't think you get 150 days, I think you get 30 from the entity of judgment on the appeal, or actually the order on the motion of the appeal. I understand where the Court is coming from, and I think even the way that the rules are to be interpreted, which is to provide for, to save appeals as opposed to punish and eliminate appeals, the issues that were before the Court on the 50b motion were discreet from the issues that are raised as a result of the judgment. Right, but you appeal that, and that's timely. Your 50a appeal is timely. It's the second one that's the problem, because that judgment, the special verdict was reached on June 17th, so 150 days from that is November 14th, 2015. The appeal would have had to have been filed from that judgment December 15th, 2015, and you didn't file until January. So it seems to me your second appeal, the jury charges and the misconduct, all of that is not timely. But didn't the Court actually get your judgment on the special verdict on February 1st, 2016? It did, eventually, yes. Yeah, so what is that due to the running of the time period? If the Court enters the judgment after the 150 days, then does that affect the time for an appeal? It seems to me that the time starts to run again if the Court then enters a judgment on a special verdict, which is in which it was required to do. Right, and it would essentially have the effect. And, again, this is assuming that a special court... But do we all say that the judgment becomes final on 150 days from an order that requires a separate judgment period? So, and then you've got 30 days from that time period. Yes, and the verdict did not become final until after the Court had to decide the 50-D motion. So, assuming, and we have had no case law that would... But it ruled on the 50-D motion way before that. It did, but assuming that the 50-D motion and the verdict combined to become some sort of final judgment that could be appealable, then the 50 days runs from that time. But even if the second appeal was untimely, in this case, the 50-D appeal raises the substantive issue. Let me ask you a question while time is running. Is it your position that if Orr resisted before the application of force, that that would not issue a probable cause for the arrest? That is correct. Under the California Supreme Court case in Yonds, the Court made clear that probable cause to arrest could exist prior to the use of excessive force. And the Ninth Circuit has accepted that explanation of how Section 148A works. And so, if probable cause exists prior to the use of the purportedly excessive force, that will not issue the probable cause that existed prior to that force. The improbable cause remains. And what evidence was there to support your contention that there was resistance before the punch? The record is complete with a description of Mr. Orr's conduct prior to the use of the punch. Not only did he repeatedly orally refuse to be handcuffed, which would in and of itself be a violation of 148A because it's delaying an officer in the performance of their duties, he also admitted and testified to the fact that when officers attempted to begin to start to move his arms behind his back, he pulled his arms forward and tucked his hands, with the intention that he testified was to keep the officers from being able to place him in handcuffs. Thereafter, they began to rotate his body back and forth, again, in order to, with the stated intention of trying to keep the officers from placing him in handcuffs. And as a result, then he was, in fact, resisting prior to the punch. All of that occurred prior to the use of the punch. But fundamentally, for 148, it isn't true that the use of force has to be commensurate with the situation at hand. So, in other words, if an officer used excessive force, an otherwise lawful risk could then become unlawful. Right? That is contrary to the Supreme Court holding it not, where they said that the conviction can lie and probable cause exists for all of the pre-excessive force resisted acts by the person. So, it does not initiate it. And in this court, in this case, we dispute that the force in this case was, in fact, excessive in and of itself. We get that. But our concern is just about the pre-conduct, whether or not that permits a lawful arrest for resisting arrest, or whether any application of excessive force in the course of that arrest, per se, as a matter of California law, makes that arrest illegal. Because that sounds like what the jury was told. So, what I'm trying to understand is, what is the law on that? The law is that probable cause for resisting arrest can exist prior to the use of excessive force. The California Supreme Court made that very clear in the Yacht case, in which you look at the entire interaction, and if at some point an officer used excessive force, that will not eliminate the probable cause. It will not invalidate the arrest. It will not invalidate the conviction for all of the three excessive force resistive acts. And so, in this case, there was a lack of clarification in the jury instruction. And then, when we got the question, we understood where the jury was having trouble, where they determined that one use of excessive force down the line in the entire interaction was, in fact, going to invalidate the entire arrest. And that is inconsistent with the California Supreme Court's explanation of 148A in the Yacht case. And this court accepted that explanation and understanding of 148A in the Hoover v. County of San Diego case. Is there a way to view this evidence as so continuous that you can't separate the force from the resistance? I don't believe so. The way that the acts unfolded in this case, it really was sequential. And so, we are able to look in the moment where there was purportedly excessive force, and how we can also view that is in line with the verdict that was found for Officer Brain. Officer Brain was found to have had probable cause for an arrest for resisting, and the only distinguishing factor, which was accepted by plaintiff and accepted by the court, was Officer Plum's use of the distraction punch. And so, we know that from looking at the verdicts and looking at what was accepted by the plaintiff and the court, that that is the critical moment in terms of the 148A arrest. So, in addition to that, even if there were to be a Fourth Amendment violation under either the excessive force or the probable cause, Officer Plum is, in fact, entitled to qualifying immunity, because in both of these cases, not only was his conduct reasonable, there is not clearly defined law that makes clear to Officer Plum that his conduct would, in fact, be violative of the Fourth Amendment. In addition to that, in addition to the right to qualify to be ID, Officer Plum is also entitled to a verdict with regard to the Bain Act. In looking at a 50B motion, the court looks at whether or not the correct legal standard was applied, and in this case, it's clear that the correct legal standard was not applied. There was no independently coercive threatening or, I apologize, I forget the verdict factor that the Bain Act uses. Independent of the coercive act of the punch itself, which is required under the Bain Act, we don't have that independently coercive act. So, in light of all of these factors, the verdicts that were entered against Officer Plum are not supported by substantial evidence, and the assault battery and the false arrest claim are pinned in on the Fourth Amendment case and the Fourth Amendment claims. In light of all of the facts of this record, the court should determine, or we're asking the court to determine that Officer Plum did not violate the Fourth Amendment when he used a distraction punch, because under the circumstances facing him, it was a reasonable use of force. In addition, he had probable cause to arrest Mr. Orr for violation of Penal Code Section 148A. He's entitled to qualified immunity on both of those claims, and there's no evidence to support that there was an independently coercive threatening or intimidating act that would support the finding of the Bain Act case. So, thank you. Morning, Michael. Dan from Plainton, New York. So, first, just quickly on the jurisdictional issue. You know, there's a problem both with the timing, but more importantly, with the fact that defendants filed two appeals, and it violates the single and penal rule that the Supreme Court has repeatedly adhered to. The Judicial Court, again, in many cases, where the court says all post-trial issues have to be wrapped up into a single appeal. Well, part of the difficulty is if the district court is comprehensive and can issue the final judgment, it kind of puts the litigants in a position of whether to appeal or not appeal. So, some of this, I think, confusion was caused by the fact that there were different judgments issued at different times. So, you should let them bear the brunt of that confusion. This court, in the Ford case, explained that the court would look to what did the litigant actually understand. And here, the defendant has said that they understood that the order on the 1250B motion was the court's final order in the case, and that's why they filed their first appeal from that. Everything flows once the court acknowledges what they said, and they realize that was the final order, because that is the time by which you have to file your appeal. I would agree with you, but for the court subsequently filing the judgment on February 1, 2016, what was the effect of that if not to de-interjudge it? Well, you know, you could look at it in different ways. Perhaps it was a mistake. It certainly was confusing when the district court did it, but it didn't change the legal effect. There's only one judgment in every case, and judgment was already entered as a matter of law. The defendant understood that. The defendant said the only reason we didn't file all of our issues in the first appeal was because we were worried it was premature. But the Ford case, in Rule 4A, says there is no such thing as a premature appeal. You file it as soon as you can, and then it will be deemed effective whatever judgment is later entered, if that was what happened. So I'm prepared to move on to another issue if the court is ready. Okay. The defendant, in their first appeal, raises this issue with the false arrest, claiming that there was resistance before the plunge, and therefore that there was an independent basis to arrest him. And the defendant explained that this all flows from jury stretch number 11 that they claim was an error of law. Now the problem with that is that the defendant didn't raise that in the trial. In fact, they agreed with jury instruction number 11. They agreed with all the court's answers about jury instruction number 11 and said any excessive force in the courts in the arrest means that an arrest for 148 would be an option. Well, putting that aside, assuming that that appeal is not a time or human article, I'm going to just assume that the evidence has to support the arrest, the probable cause for the arrest. So the question is, what is the law? What evidence is going on? Is that a legal arrest? And so my question is, is it your position that any application of force at any time during the course, excessive force during the course of arrest, initiates probable cause, or is it your position that the resistance, it creates probable cause, but that just wasn't in the hearing? Both, Your Honor. And so that's the first point. This time by the court, in Smith v. Sinutana, it said exactly that, that any excessive force in the course of arrest renders an arrest for 148 for any conduct in the course of that arrest illegal. But Young doesn't say that, and the NYSERDA went along with Young, so. I understand what the court is saying about Young. Young was dealing with a different issue, a Hick issue, as was Hooper afterward, and then this court again followed Smith v. Sinutana in DePete's case. And my point about the fact that the defendant failed to raise it, the implication of that is that this limited not to plain error review, and I would say how could it be plain error for the district court to have followed a non-bond decision of this court that wasn't reversed, that the defendant invited the court to follow? So if anything, it was infighting error, and both the district court and the defense said the jury's rush number 11 compelled the jury's verdict for false arrests. So it really boils down to that. So if anything, if it was error, it was infighting error. And furthermore, the jury could have found that any resistance by Mr. Orr in the few seconds before the punch was not willful, and they could have found that on the facts, and they also could have found that there was excessive force even before the punch. In other words, this court has repeatedly said where there's no need for any force, that any force is excessive. And here there was evidence that the officers had discretion not to handcuff Mr. Orr because their sergeant declined or removed his handcuffs when it was obvious he needed his hands for balance, and she said they had the same right to use the same judgment that I did. There was also a policy of the ZHP that came into evidence that said he could be released at the scene because he was elderly and confused. And so the jury could have found that he had discretion not to even put their hands on him at all. So this was clearly within the realm of the district court. And how could they find that there was a legal arrest officer, Ray? Well, because there just was never a clear narrative between the two officers, and so as the district court found, the jury could have found that they each saw different things to create different kinds of probable cause. And, you know, it's hard to tell, but the remedy, again, for inconsistent verdict is something that the defendants have in Ray, and that's a new trial, where they never made a request for a motion for a new trial. So if that's what they were complaining about, then that's really not before the court. Can you address the attorney's fees and the use of discretion for you? Right? So the district court was in the best position there except with the trial and handled multi-pay trial and restricting with counsel. So where was the error here such that we should find abuse, use, and discretion? Our counsel through the trial is going to address all of these issues, so I'll prepare to defer to him if the court is ready to discuss fees. Thank you. Thank you. Good morning, Your Honors. Richard Curl for the plaintiff on the plaintiff's appeal from the district court's attorney's fees report. I was going to go ahead and answer Judge Wynn's question first since that was directed at the attorney's fees issue, and I believe we've shown in our briefing that there were significant errors in the district judge's attorney's fee report, which, because it used a large percentage reduction, should be subject to heightened scrutiny in this court. In fact, we submit that the trial judge's decision sets a very dangerous precedent for the enforcement of civil rights, particularly in the Eastern District of California, in that it is an error applied and applies an improper standard. It applied an improper standard, relied heavily on an improper standard, and reached a standard. What standard is that, the improper standard? The first standard, and it applied improperly, stemmed from the citation to the law review article that indicated that civil rights actions for damages aren't as effective as they could be or were intended to be because of indemnification policies and because the agencies don't pay attention to them. And from that article, the district judge concluded that unless you can show either punitive damages or some tangible change in the defendant's future change, in the defendant's behavior, there has been no public benefit. From the lawsuit. And that standard... He said that there can never be, or in this case, he didn't see a substantial public benefit. He said in this case you could find none because the CHP said they weren't going to change their behavior, they didn't do anything wrong. But this court, in several cases, has said that is not the correct standard, has rejected that very argument. It rejected it in the Morales case, it rejected it in the Mahatma Watkins case, it rejected it in the Connie v. San Diego case. In each of those cases, the defendant said, we didn't do anything wrong, we're not going to change anything, and no public benefit was obtained through them. In those cases, just the nominal damages court and the Ninth Circuit, in each of those cases, has rejected that argument based on the well-established Supreme Court precedent that individual civil rights cases for damages do confer a public benefit. They set parameters for police misconduct, they enforce the individual's constitutional rights, which in itself is a valuable benefit, and they act as a deterrent to future misconduct along the same lines. And we submit that in this case, not only... First of all, we submit that the notion that there's no public benefit from an individual civil rights case is both a misreading of the article that the court relied on, because it does not say that individual civil rights cases are of no benefit. It only says they could be better if there were indemnification policies. Better indemnification policies, or if cities paid attention to them. But it expressly disavows any urging or position that existing civil rights law should be changed, or that in some way civil rights actions should be discouraged. In fact, the whole point of it is to encourage civil rights actions and make them more effective by either reforming indemnification law or requiring enforcement agencies to react to decisions that are made and adopt their policies accordingly. And in this case, it goes beyond the fact that that was an error of law. I believe there was an error of fact also in the fact that this judge issued an opinion on the trial motion or not the trial motion, the Rule 50 motion, that sets out the parameters of what is lawful conduct by a CHB officer or any police officer in these circumstances. In that sense, it helps to refine the law, make more clear to other law enforcement agencies in the CHB when a distraction blow is permissible and when it's not, when an arrest is lawful and when it's not. And that distinguishes it from the cases that the trial judge relied on such as McCown and McGinnis, which were settlements that didn't involve any such, it didn't involve either a finding of a constitutional violation or any written ruling that would affect future conduct. So to me, the most dangerous part and the most indefensible part of the trial court's ruling was to essentially say that because of this law review article, the Supreme Court's decisions in Rearside v. Rivera and Plaintiff v. Bergeron in all whole manner of cases as well as this circuit's decisions in Mott's, Watkins, Guy, Morales are all no longer valid. McCourt didn't rely exclusively on the law review article as the basis for its ruling. It also looked at all of the information that was before it. So is it fair to say that the court just adopted the rationale of the law review article? No, of course it did mention some other factors, but the primary rationale for the court's decision was this is a case that's just about money, and cases that are just about money don't promote any public benefit. And I submit to you that, first of all, it's not a case just about money, and that's what these cases have said, that these cases involve important customs and show rights that act as a deterrent. And secondly, that the law review article didn't change that law, and that was the primary basis for its 50% reduction. It then went on to say that in their court, they have a rule that if you only get, in a civil rights case, you only get compensatory damages, and don't get punitive damages or injunctive relief, and you don't get all the damages you asked for, 100% of the damages you claim, you're going to face a 35% to 75% reduction in your fee. I think that's an overreaching of what he's said. I think that's taking some liberties with it, that Bill Fletcher said that there was a rule in that court that you're going to get 35% to 70% or whatever you just said. I don't think that does matter. He may not have used the term rule, but he said in this court, that's what he said. It's as if you say there is a court rule, and as you say there are cases that have held. I agree. He didn't say there's a rule. He said in this court, generally, this is what we do. And I submit that that is an improper reading of the attorney's fee statute, and the purposes of the attorney's fee statute, there are varying cases that we've submitted in our brief, where plaintiffs do not get 100% of what they asked for, in fact, get a very small percentage of what they asked for, and are still not subjected to massive partial success reductions because of that. Part of that is based on the purpose of the law, which is to compensate counsel for the efforts that are reasonably necessary to obtain the results they obtained. And in this case, the trial court found that the lodestar submitted by, incurred by plaintiff's counsel, with very minor exemptions, was reasonably incurred to obtain the results obtained. So many of the public fee awards are also intensive and very, very specific. Mr. Court recognizes that he's supposed to take into account the varying factors guided by the case law, and even guided by different factual scenarios where other courts have handled the situations in a way that the right circuit has no proof to. And it just comes down to, given all of this guidance, and I'm applying this guidance to the facts of this case, how much is this case essentially worth? And so what you're saying is that, with regard to some of these factors, the calculation of the loads are the hourly, that there were some missteps, and so we should get remanding for do-over. I think that's the only alternative. I think in some cases the remand could be more specific as to what can and can't be done. But the cases in the Ninth Circuit, under California law, say that if the trial court has great discretion in determining fees, I concede that, and that's appropriate. But if it applies incorrect legal standards, that decision should be reversed, and particularly when it employs massive reductions like it did here. It is denying the latest council compensation for 750 hours of work that it had already found was reasonably incurred, simply because, primarily because, they asked for more from the jury than they got, which is hardly a rare or exceptional circumstance, or an unusual circumstance. The district court did list other factors, and some of those other factors were properly applied in this case. For example, it noted the fact that the plaintiff has lost his claims against Brayman CHP. What it didn't take into account was the fact that the plaintiff's counsel had already deducted and not claimed 338 hours of time spent against Brayman CHP. So when it reduces the fee properly incurred against Mr. Plumb, based on time that hasn't even been claimed, it's essentially double-counting the same result. It also said, well, Mr. Plumb's counsel only won 7% of their claims, but most of those claims were against Brayman CHP and have already been deducted. In fact, Mr. Orr succeeded almost entirely at trial. He won five of the six claims that had been presented. How long was the trial? Ten days. And he won five, the jury found for him, won five of the six claims, and yet he's been, the trial judge held that he had partial success to 250%. Mr. Plumb, he did succeed against two of the parties that he sued. No, that is true. But as I said, the plaintiff's counsel deducted at a time. So to deduct again from the time that was spent against Mr. Orr makes no sense. It's a double-dial. Did he deduct from the time or did he apply? He didn't deduct from the time. He took into account the overall status when he applied a reduction, but he didn't reduce the time spent. Well, to that effect, if you apply a 50% reduction, you're denying them compensation for half their time. And to deny them compensation for half their time based on the lack of success against Mr. Brayman CHP when that time isn't even included in the claim makes no sense. Do we have anybody else? We need to wind up. You have 25 seconds left. The enforcement of civil rights, if there's a legal action to police misconduct actions, I believe has never been more important. But if qualified and highly skilled counsel like the guy in Sherwin bring a successful action to achieve a result that is more than and damages more than 90% of the civil rights actions that are brought and yet find themselves at the end being denied compensation for half their work, people are not going to bring qualified and skilled attorneys. They're going to look elsewhere. The effective rate that Dr. Sherwin received in his case was $155 an hour. That's about one-fourth to one-fifth of what they would be paid in the open market for similar skills. The purpose of the Civil Rights Act is to compensate them comparably to what they would be paid in the open market. The trial court's judgment by applying the wrong standards led to a very adverse result. How do you ask that it be reversed? Thank you, counsel. Thank you. The bottom row. First, with regard to the assertion by plaintiffs that the single judgment rule would be violated by permitting the two appeals in this case, none of the public policy that underlies the single judgment rule comes into play in this case. The purpose in the single judgment rule is really threefold-winded to prevent piecemeal appeals throughout the course of litigation. We're not having piecemeal appeals. The intention is that the lower courts be allowed to decide the matters that are before them without significant interruption from the courts of appeal. We don't have that here. We have a completed jury trial with determinations, and so the single judgment rule, that fundamental policy doesn't come into play. In addition, the second policy is to avoid obstruction of claims by permitting harassment and costs from initiation to judgment. Again, we have a completed judgment in this case at the time of all police appeals. There was not a substantial amount of harassment of a party during the course of litigation. And then finally, for the official judicial administration, we were able to address any sort of splicative issues, any sort of potential waste of any judicial resources by consolidating these appeals. And so the public policy underlying the single appeal rule really doesn't come into play. In addition, it was suggested that a party should just file their appeal whenever, and then Rule 4 will save it, so that that way we can have the, because Rule 4 provides that the appeal is then deemed final on the day of the judgment. That undermines the very clear purpose of Rule 58, requiring a separate judgment. So if we're going to have a, Rule 58 was designed to address people not just filing appeal when and whenever, and so Rule 58 was designed to address that if we were to interrupt Rule 4 in a way that's inconsistent with that the rules would be interrupted in a matter that just simply won't make sense. With regard to the assertions that there was a discretion to not handcuff Mr. Orr and to release him on the side of the road, it misstates the record and misstates the testimony of Sergeant Kelly. Sergeant Kelly testified that the officers had no discretion to handcuff Mr. Orr at the side of the road in order to transport him to the BCHB area office. She had the discretion and the officers would have had the discretion to take off Mr. Orr's handcuffs to enable him to ascend a set of stairs that he could not navigate with the handcuffs on. That was the discretion to remove the handcuffs. In addition, Sergeant Kelly testified that the officers would not have had the discretion to do a sign and release just because Mr. Orr was elderly on the side of the road. The sign and release requirements actually require the person to be transported to the BCHB office in approval by his sergeant, so it misstates the record to simply state that. Furthermore, Officer Plum is not contending that there's an inconsistent verdict here. In the alleged inconsistency as explained by the jury questions relating to the use of the punch, there is a discernible effect that made the verdict against Officer Plum separate and different from the verdict against Officer Plum. There is a frame which was explained by, that that distinction was explained by counsel and adopted by the court. There isn't an inconsistent verdict. There's a distinction, in fact, that has resulted in two different verdicts in this case. Just quickly to address some of the fee issues. I have a question before you do that. If the jury brief is not timely and putting, assume that, what is the nature of the error as to the arrest if we buy your argument that there can be probable cause for an arrest of resisting arrest before the force is applied? If the argument is accepted that the probable cause can exist for the offense, then that will require the reversal of that verdict, because what we have are facts that clearly support that. Are you saying there's no evidence to support your verdict? Is that what the argument is? That is correct. That is correct. With regard to the fee issues, no abuses of discretion have been identified, and I think that there are a lot of misstatements of the court's ruling in this case, and that the fee issue should stand. Thank you, counsel. Thank you to all counsel for your audience in this case. We just ask that you be submitted for decision by the court and release our calendar for the day and for the week. We are adjourned. Thank you.
judges: Rawlinson, Nguyen, Vance